| | | |
|---|---|---|
| STERIGENICS U.S., LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 19 C 1219 |
| v. | ) | |
| | ) | Chief Judge Rubén Castillo |
| JOHN KIM et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Sterigenics U.S., LLC ("Plaintiff") brings this action against the Illinois Environmental Protection Agency ("IEPA") and John Kim ("Kim") in his capacity as acting director of IEPA (collectively, "Defendants"). (R. 54, Am. Compl. ¶¶ 1-7.) Plaintiff operates a sterilization facility in Willowbrook, Illinois, where it stores ethylene oxide, a chemical substance used to sterilize medical devices. (*Id.* ¶ 5.) Plaintiff alleges that Defendants overstepped their authority under Illinois law and deprived it of procedural due process under the U.S. Constitution when Defendants issued a "seal order" that required Plaintiff to seal all storage containers of ethylene oxide at the Willowbrook facility. (*Id.* ¶¶ 1-4, 38-63.) Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), Defendants move to dismiss Plaintiff's lawsuit for lack of subject-matter jurisdiction and failure to state a claim. (R. 63, Mot. at 1-2.) Defendants' motion is granted for the reasons stated below.

### BACKGROUND

Plaintiff is a limited liability company with its principal place of business in Broadview Heights, Ohio, that provides commercial sterilization services for companies in the healthcare and food industries. (R. 54, Am. Compl. ¶ 5.) Plaintiff operates a sterilization facility in

Willowbrook that, on a typical day, sterilizes approximately 1,000 medical devices used in heart surgery, 1,000 knee implants, 1,500 surgical kits, 16,000 catheters, 11,000 syringes, thousands of diabetes monitoring and care kits, and many other medical products. (*Id.*) Plaintiff or its predecessors have operated this facility continuously since 1984, and the facility has allegedly been operating pursuant to permit number 95120085 issued by IEPA under the U.S. Environmental Protection Agency's ("EPA") Clean Air Act Permit Program. (*Id.* ¶¶ 11-12.) Plaintiff alleges that it has consistently emitted "far less ethylene oxide than its permit allows," and that it has "voluntarily improved its safety measures for ethylene oxide well beyond what the law requires." (*Id.* ¶¶ 14-15.) Plaintiff also claims that the Willowbrook facility is not currently in violation of any rules or regulations promulgated by EPA or IEPA, and that its operating permits have not been modified, terminated, or revoked. (*Id.* ¶¶ 17-18.)

On February 15, 2019, Defendants issued a seal order, which sealed "[a]ll storage containers of ethylene oxide" at Plaintiff's Willowbrook facility pursuant to 415 ILL. COMP. STAT. 5/34(b), a statutory provision in Illinois' Environmental Protection Act (the "Act") that Plaintiff claims only applies if an emergency exists or if there is imminent and substantial endangerment to the public health, welfare, or environment. (*Id.* ¶¶ 1-2.) Plaintiff alleges that, instead of seeking relief through the court system or regulatory process, "Defendants decided to bypass the court system . . . to 'sandbag' [Plaintiff]" by issuing the seal order. (*Id.* ¶ 22.) Plaintiff claims that at no point before or on the date the seal order was issued, did the IEPA or EPA represent that the Willowbrook facility's use and storage of ethylene oxide posed a safety concern or emergency. (*Id.* ¶ 23.) Plaintiff alleges that the seal order justifies itself by citing a questionable August 2018 report regarding the Willowbrook facility's ethylene oxide emissions,

and that the EPA sent letters to Illinois officials stating that the Willowbrook facility was not causing immediate harm to persons in and around Willowbrook. (*Id.* ¶¶ 25-29, 31.)

Plaintiff has allegedly attempted to reach out to IEPA to determine what measures it can take to have the seal order lifted and continue sterilization activities in Willowbrook, but Plaintiff claims that Defendants have not cooperated. (*Id.* ¶ 33.) Plaintiff alleges that the seal order has caused serious harm to Plaintiff, Plaintiff's customers, and the United States' healthcare system at large. (*Id.* ¶ 35.) According to Plaintiff, the closure of the Willowbrook facility impacts several medical device companies and "risks creating [medical] device shortages with serious adverse effects on healthcare in this country." (*Id.* ¶¶ 36-37.)

## PROCEDURAL HISTORY

On October 30, 2018, the state of Illinois filed a lawsuit against Plaintiff in Illinois state court. (*Id.* ¶ 19.) Plaintiff removed the case to this District where the case was assigned to U.S. District Judge John Lee. (*Id.*) Plaintiff alleges that the October 2018 lawsuit seeks the same relief as the seal order, but none of the relief in that case was pursued on an emergency basis or claimed to be necessary to resolve an "imminent and substantial endangerment" to the public health, welfare, or environment. (*Id.*) On March 11, 2019, Judge Lee remanded the October 2018 lawsuit back to state court. (18-cv-8010, R. 48, Order at 16.)

Judge Lee reasoned there was no subject-matter jurisdiction to proceed in federal court and thus rejected Plaintiff's contention that the State brought a federal cause of action sufficient to establish federal question jurisdiction. (*Id.* at 7-13.) Specifically, Judge Lee reasoned that the lawsuit did not involve a suit by the State against Plaintiff for failure to comply with the Clean Air Act, 42 U.S.C. §§ 7401, *et seq.*, or any other federal statute that might raise a federal question, but instead was a suit to enjoin Plaintiff "*despite* its compliance with the [Clean Air

Act][.]" (*Id.* at 9-10.) As a result, Judge Lee concluded that the lawsuit was one involving only state law causes of action, and that Illinois' state laws and regulations implementing the Clean Air Act were not claims arising under federal law that could provide a basis for subject-matter jurisdiction. (*Id.* at 10-15.)

Approximately a month before Judge Lee remanded the October 2018 action, on February 18, 2019, Plaintiff filed its initial complaint in this case, which brought a claim under 42 U.S.C. § 1983 for deprivation of its procedural due process rights under the Fifth and Fourteenth Amendments and a claim alleging that Defendants violated Section 34(b) of the Act. (R. 1, Compl. ¶¶ 24-34.) The same day Plaintiff filed its complaint, it also filed a motion for a preliminary injunction and temporary restraining order ("TRO"). (R. 5, Mot.) The motion for a TRO was heard on February 20, 2019, by U.S. District Judge Matthew Kennelly who was the designated emergency judge at the time. (R. 28, Min. Entry.)

Judge Kennelly denied Plaintiff's motion for a TRO and reasoned that Plaintiff did not have a reasonable likelihood of success on the merits. (R. 51-1, Tr. at 74.) Judge Kennelly relied on the U.S. Supreme Court's decision in *Hodel v. Virginia Surface Mining & Reclamation Ass'n, Inc.*, 452 U.S. 264, 298-305 (1981), in which the Supreme Court ruled that a state statute did not violate constitutional rights to due process although it allowed a state agency to order, without a hearing beforehand, a cessation of surface mining if necessary to protect public health or safety so long as a hearing or process occurred after the issuance of the cessation order. (*Id.* at 74-76.) Judge Kennelly reasoned further that the controlling inquiry was whether Section 34(b) of the Act is incapable of providing due process and not whether Defendants had authority under the Act to issue the seal order. (*Id.* 75-76.) Judge Kennelly concluded that because the Act provides for due process after Defendants issued the seal order, Plaintiff has little chance of succeeding on

4

the merits of its due process claims. (*Id.*) Judge Kennelly also found that Plaintiff's lawsuit did not have a reasonable likelihood of success on the merits because it essentially asks a federal court to order a state official to comply with state law and therefore is likely barred by the Eleventh Amendment. (*Id.* at 76-77.) Accordingly, Judge Kennelly denied the TRO. (*Id.* at 77.)

On February 27, 2019, the case was reassigned to this Court. (R. 38, Order.) Subsequently, on March 7, 2019, Plaintiff filed an amended complaint. (R. 54, Am. Compl.) The amended complaint brings three counts against Defendants. (R. 54, Am. Compl. ¶¶ 38-63.) The first two counts bring claims under 42 U.S.C. § 1983 for a deprivation of Plaintiff's procedural due process rights under the Fifth and Fourteenth Amendments based on Defendants' alleged failure to provide a hearing or other adequate process to challenge the issuance of the February 15 seal order before or after Defendants issued the seal order. (*Id.* ¶¶ 38-57.) The third count alleges that the seal order is an unlawful use of Defendants' authority under Section 34(b) of the Act. (*Id.* ¶¶ 58-63.)

Defendants move to dismiss the amended complaint, (R. 63, Mot.), first arguing that Plaintiff fails to plausibly allege that Defendants deprived Plaintiff of its constitutional right to a hearing or other process to challenge the seal order before or after it was issued. (R. 64, Mem. at 6-12.) Defendants maintain that the Constitution allows them to deprive Plaintiff of its property without a pre-deprivation hearing in situations where "swift action is necessary to protect the public health and safety." (*Id.* at 8.) Defendants also argue that a pre-deprivation due process claim only arises if the Act is incapable of affording due process; therefore, according to Defendants, Plaintiff's claim fails because the Act does afford due process. (*Id.* at 9-10.)

With respect to Plaintiff's claim that it was deprived of due process after the seal order was issued, Defendants again argue that the Act affords adequate process and therefore the Court

should dismiss Plaintiff's post-deprivation due process claim. (*Id.* at 10-11.) Defendants also argue that the seal order itself outlines what Plaintiff can do to have the seal order lifted, and that Plaintiff adopts an untenable position that would require Defendants to provide detailed instructions regarding the steps Plaintiff must take before the seal order is lifted. (*Id.* at 11-12.)

According to Defendants, because there is no viable federal claim, the Court should dismiss Plaintiff's state law claim because the Court is left with no independent grounds for subject-matter jurisdiction. (*Id.* at 12-13.) Defendant also maintains that, in addition to Plaintiff's failure to state a federal claim giving rise to federal jurisdiction, Plaintiff's lawsuit is barred by the Eleventh Amendment because it asks the Court to order state officials to comply with state law. (*Id.* at 13-15.) Lastly, Defendants argue that, pursuant to *Younger v. Harris*, 401 U.S. 37 (1971), the Court should abstain from exercising jurisdiction over this case because it involves an ongoing state administrative enforcement proceeding. (*Id.* at 15-16.)

In response, Plaintiff argues that it has adequately alleged a deprivation of its procedural due process rights. (R. 72, Resp. at 5-12.) Plaintiff also maintains that it has sufficiently pleaded a violation of due process because it has alleged that Defendants issued a facially valid permit to operate the Willowbrook facility and then deprived Plaintiff of that permit without providing notice of the permit's invalidity. (*Id.* at 8-11.) According to Plaintiff, controlling legal authorities forbid such "regulation by ambush." (*Id.* at 9.) Plaintiff also contends that its lawsuit is not barred by the Eleventh Amendment, and that the abstention doctrine from *Younger* does not apply. (*Id.* at 12-15.) Defendants' motion to dismiss is fully briefed and ripe for the Court's consideration. (R. 75, Reply.)

6

## LEGAL STANDARDS

A complaint must set forth a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). "A motion to dismiss pursuant to Rule 12(b)(6) challenges the viability of a complaint by arguing that it fails to state a claim upon which relief may be granted." *Firestone Fin. Corp. v. Meyer*, 796 F.3d 822, 825 (7th Cir. 2015) (quotation and internal alteration omitted); *see also* FED. R. CIV. P. 12(b)(6). "Although detailed factual allegations are unnecessary, the complaint must have 'enough facts to state a claim to relief that is plausible on its face.'" *Pierce v. Zoetis, Inc.*, 818 F.3d 274, 277 (7th Cir. 2016) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. "To rise above the speculative level of plausibility, the complaint must make more than threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Oakland Police & Fire Ret. Sys. v. Mayer Brown, LLP*, 861 F.3d 644, 649 (7th Cir. 2017) (quotation and alteration omitted). In deciding a motion to dismiss, however, the Court accepts the factual allegations in the complaint as true and draws all reasonable inferences in favor of the plaintiff. *Kanter v. Barr*, 919 F.3d 437, 441 (7th Cir. 2019).

Plaintiff also moves to dismiss pursuant to Rule 12(b)(1). (R. 63, Mot. at 1-2.) A motion to dismiss pursuant to Rule 12(b)(1) challenges this Court's subject-matter jurisdiction over the action. FED. R. CIV. P. 12(b)(1). Defendants' Rule 12(b)(1) motion is a facial challenge to subject-matter jurisdiction because it contends that Plaintiff's amended complaint lacks sufficient

7

factual allegations to establish jurisdiction. *See Silha v. ACT, Inc.*, 807 F.3d 169, 173 (7th Cir. 2015). The Court reviews a facial challenge to subject-matter jurisdiction under the same standard set forth above for a motion to dismiss for failure to state a claim. *Id.* at 173-74. Thus, the Court determines whether Plaintiff's well-pleaded allegations plausibly suggest a basis for subject-matter jurisdiction. *Id.*

## ANALYSIS

### I.     The Eleventh Amendment

The Court first addresses Defendants' argument that the Court lacks subject-matter jurisdiction over this lawsuit because it is barred by the Eleventh Amendment, (R. 64, Mem. at 13-15). The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. AMEND. XI. Courts have construed this language broadly to confer sovereign immunity upon the states, which "guarantees that an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State." *Council 31 of the Am. Fed'n of State, Cty. & Mun. Emps., AFL-CIO v. Quinn*, 680 F.3d 875, 881 (7th Cir. 2012) (quotations omitted). The Eleventh Amendment, therefore, bars private individuals from suing a state or state officials acting in their official capacities in federal court without the state's consent. *Mutter v. Rodriguez*, 700 F. App'x 528, 530 (7th Cir. 2017); *see also Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 121 (1984) ("A claim that state officials violated state law in carrying out their official responsibilities is a claim against the State that is protected by the Eleventh Amendment."). "Obligations of public bodies under state law should be determined by state courts unless there is a very good reason why the federal court should intervene." *Shegog v. Bd. of Educ. of City of Chi.*, 194 F.3d 836, 839 (7th Cir. 1999). Consequently, "[h]ow

8

far state law exposes state and local agencies to liability is a delicate question that federal judges should hesitate to tackle." *Myers v. Cty. of Lake*, 30 F.3d 847, 849 (7th Cir. 1994).

There are, however, exceptions to the Eleventh Amendment's reach. One exception set forth by the Supreme Court in *Ex parte Young*, 209 U.S. 123, 159-60 (1908), applies to suits against state officials in their official capacities to require their compliance with federal law on an ongoing basis. *McDonough Assocs., Inc. v. Grunloh*, 722 F.3d 1043, 1049 (7th Cir. 2013); *see also Ex parte Young*, 209 U.S. at 155-56, 160. Plaintiff argues that this lawsuit falls within the *Ex parte Young* exception because it asks the Court to order state officials to prospectively comply with federal law. (R. 72, Resp. at 13-15.)

In determining whether the doctrine of *Ex parte Young* applies, "a court need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *McDonough Assocs.*, 722 F.3d at 1051 (internal quotation marks and alterations omitted); *Council 31*, 680 F.3d at 882. Plaintiff fails the first part of this inquiry because it only alleges a violation of state law.

Plaintiff's allegations are analogous to those in *Tenny v. Blagojevich*, 659 F.3d 578 (7th Cir. 2011), a case where the court concluded that the plaintiffs' due process claims were barred by the Eleventh Amendment. In *Tenny*, inmates alleged that state officials marked up the prices above the Illinois statutory limit for goods purchased from prison commissaries. *Tenny*, 659 F.3d at 579-80. The inmates claimed that they were deprived of procedural due process because they never had an opportunity to challenge the marked-up prices before the prices took effect, but the court concluded that the due process claims were barred by the Eleventh Amendment because the allegations were "about *what* was done (the mark-up in excess of 25%), not the *procedures* followed to do it." *Id.* at 582-83. Thus, the court reasoned that the constitutional due process

claims essentially complained of a state violating state law and were barred by the Eleventh Amendment. *Id.* at 583.

Like *Tenny*, Plaintiff's allegations are directed toward what Defendants did, namely, invoking Section 34(b) allegedly without any emergency or imminent and substantial endangerment to public health that would justify action under Section 34(b). (*See, e.g.*, R. 54, Am. Compl. ¶ 41.) Specifically, Plaintiff alleges that Defendants issued the seal order without any explanation, any true emergency situation at the Willowbrook facility, and without affording Plaintiff the ability to address any emergency situation and lift the seal order in a manner other than resorting to litigation in the courts. (*Id.* ¶¶ 38-57.) The crux of these allegations is that Defendants violated state law to bypass the regulatory process and courts. (*Id.* ¶¶ 3, 22.) As a result, Plaintiff's lawsuit merely recasts a state-law claim seeking injunctive relief for violation of Section 34(b) as constitutional due process claims. (*See id.* ¶¶ 58-63.) Although Plaintiff labels its claims as procedural due process claims, the Eleventh Amendment prohibits this Court from ordering Defendants to comply with Section 34(b). *See Tenny*, 659 F.3d at 583; *Sutherland v. Leonhart*, No. 11-CV-4663, 2012 WL 1886442, at *3 (N.D. Ill. May 23, 2012) (dismissing complaint where the plaintiff, at bottom, alleged that a state failed to fulfill its duties under state law); *Price v. Ill. Dep't of Ins.*, No. 12 C 6959, 2013 WL 535563, at *2 (N.D. Ill. Feb. 12, 2013) ("[T]o the extent that [the plaintiff] accuses [a state official] of failing to properly apply Illinois law governing the issuance of insurance licenses, this court lacks jurisdiction to consider his claims.").

The Court, as a result, rejects Plaintiff's argument that its claims fall within the *Ex Parte Young* exception, which applies to claims involving violations of federal law, not state law. *See McDonough Assocs., Inc.*, 722 F.3d at 1051. The Court also rejects Plaintiff's argument that its

claim against Defendants under Section 34(b) of the Act is a violation of federal law that does not trigger any Eleventh Amendment concerns.[1] (*See* R. 72, Resp. at 14-15.) Section 34 is a provision of a state statute, and Plaintiff's lawsuit brings a cause of action under this state statute, which allows Plaintiff to challenge the seal order in a lawsuit seeking injunctive relief. 415 ILL. COMP. STAT. 5/34(d); *see also Chi. Tribune Co. v. Bd. of Trs. of Univ. of Ill.*, 680 F.3d 1001, 1002-03 (7th Cir. 2012) (focusing on, for purposes of whether a claim is barred by the Eleventh Amendment, whether the claim "arises under Illinois law").

Plaintiff refers to Section 34 in its complaint and does not bring this action pursuant to the federal Clean Air Act. Nor can Plaintiff bring a lawsuit under the Clean Air Act to enjoin the seal order because the Clean Air Act only allows a private party like Plaintiff to sue to enforce emissions standards imposed by the Clean Air Act. *See* 42 U.S.C. § 7604(a)(3). Accordingly, because Plaintiff brings state law claims and invokes state law remedies to force Defendants to comply with state law, the Eleventh Amendment bars this Court from adjudicating Plaintiff's claims. *See Jones v. Indiana*, 533 F. App'x 672, 673 (7th Cir. 2013) ("The Eleventh Amendment to the Constitution *prevents federal courts from awarding relief, under state law*, against states and their agencies." (emphasis added)); *James*, 373 F. App'x at 621 (observing, in a case where the plaintiff based his claim on a state statute, that although *Ex parte Young* "permits prospective relief against a state official to ensure future compliance with federal law, this approach does not apply to claims under state law").

Plaintiff argues that its claims under Section 34(b) allege a violation of federal law because Section 34(b) is part of Illinois' State Implementation Plan ("SIP") under the federal

---

[1] Notably, Plaintiff essentially conceded during argument on its motion for a TRO that its Section 34 claim is a state law claim. (R. 51-1, Tr. at 73 (Plaintiff's counsel stating that "we would have a problem" under the Eleventh Amendment if the only claim brought was Plaintiff's Section 34 claim).)

Clean Air Act that the EPA must approve. (R. 72, Resp. at 14.) Plaintiff contends that once the SIP is approved by the EPA, "a state rule embodied in a SIP becomes enforceable federal law." (*Id.* (quoting *Indiana v. U.S. Envtl. Prot. Agency*, 796 F.3d 803, 806 (7th Cir. 2015).) That the federal government and state government work together to enforce environmental laws does not change the Court's conclusion that the Eleventh Amendment bars Plaintiff from pursuing this lawsuit in federal court. The U.S. Court of Appeals for the Seventh Circuit has rejected an argument similar to Plaintiff's in a case where the plaintiff invoked the Act in federal court to challenge an IEPA decision. *E.g.*, *EOR Energy LLC v. Ill. Envtl. Prot. Agency*, 913 F.3d 660, 664 (7th Cir. 2019) (affirming dismissal of claim that IEPA did not have jurisdiction to regulate the plaintiff's acid dumping and concluding that the suit was barred by the Eleventh Amendment "[a]lthough the enforcement of environmental laws is in part accomplished through a partnership between the states and the federal government"); *see also Union Oil Co. of Cal. v. Leavell*, 220 F.3d 562, 566 (7th Cir. 2000) (observing that Illinois regulatory agency "should have been dismissed immediately" from a lawsuit related to the agency's actions because the Eleventh Amendment barred the claim against the agency to the extent it relied on state law).

Additionally, the legal principle and supporting case law that Plaintiff relies on stand for the simple proposition that the federal government can enforce SIP rules. *Indiana*, 796 F.3d at 806; *Gen. Motors Corp. v. United States*, 496 U.S. 530, 540 (1990) ("The language of the Clean Air Act plainly states that EPA may bring an action for penalties or injunctive relief whenever a person is in violation of any requirement of an 'applicable implementation plan.'"). They do not address Eleventh Amendment concerns or stand for the broader proposition that claims invoking a state's environmental protection statute and state remedies also allege violations of federal law

or claims arising under federal law. *See Indiana*, 796 F.3d at 806; *Gen. Motors Corp.*, 496 U.S. at 540.

Plaintiff also contends that under "Judge Lee's reasoning" for remanding the October 2018 action to state court due to a lack of subject-matter jurisdiction, Plaintiff's claim for a violation of Section 34(b) alleges a violation of federal law. (R. 72, Resp. at 15.) The Court disagrees. Judge Lee only reasoned that federal question jurisdiction might exist "*if the State were suing* [Plaintiff] for failing to meet its . . . permit obligations, and thus, national air quality standards." (18-cv-8010, R. 48, Order at 9-13 (emphasis added).) That is not the situation here; rather, *Plaintiff is suing* the State for allegedly acting outside of its authority under Illinois' SIP. (*See* R. 72, Resp. at 15.) As Judge Lee noted in his decision, the parties' dispute concerns Defendants' desire to stop Plaintiff's emissions of ethylene oxide at the Willowbrook facility "*despite* its compliance with the [Clean Air Act] and the SIP." (18-cv-8010, R. 48, Order at 9-10.) Like the dispute before Judge Lee, Plaintiff alleges it complies with all regulatory requirements, but Defendants nonetheless issued a seal order requiring Plaintiff to seal all ethylene oxide containers at the Willowbrook facility. (R. 54, Am. Compl. ¶¶ 2-3, 14, 17-18, 22-34.) Thus, Plaintiff's suit implicates state, not federal, law. (*See* 18-cv-8010, R. 48, Order at 9-13.) Accordingly, this lawsuit is dismissed without prejudice to Plaintiff pursuing its claims in state court. *See Lewert v. P.F. Chang's China Bistro, Inc.*, 819 F.3d 963, 969 (7th Cir. 2016) (dismissal for lack of subject-matter jurisdiction is a dismissal without prejudice).

## II.     Procedural Due Process Claims

Even if sovereign immunity did not bar Plaintiff's lawsuit, the suit would nevertheless be dismissed for failure to state any federal claim giving rise to federal jurisdiction. *See* 28 U.S.C. § 1331. Section 1983 creates a federal cause of action against any person who, under color of state law, subjects, or causes to be subjected, any citizen of the United States "to the deprivation

of any rights, privileges, or immunities secured by the Constitution[.]" 42 U.S.C. § 1983. Plaintiff alleges that Defendants deprived it of its due process under the Fifth or Fourteenth Amendment by issuing the seal order without a hearing or other process and because there is no adequate process for Plaintiff to lift the seal order. (R. 54, Am. Compl. ¶¶ 38-57.)

"The Due Process Clause of the Fifth and Fourteenth Amendments prohibits deprivation of life, liberty, and property without due process of law." *Mann v. Vogel*, 707 F.3d 872, 877 (7th Cir. 2013) (quotation omitted). "A procedural due process claim under § 1983 requires that the plaintiff allege (1) deprivation of a protected interest, and (2) insufficient procedural protections surrounding that deprivation." *Cannici v. Vill. of Melrose Park*, 885 F.3d 476, 479 (7th Cir. 2018) (quotation omitted). Therefore, "[a] procedural due process claim involves a two-step analysis: First, [the Court] determine[s] whether the defendants deprived the plaintiff of a protected liberty or property interest, and if so, then [the Court] assess[es] what process was due." *Abcarian v. McDonald*, 617 F.3d 931, 941 (7th Cir. 2010) (quotation omitted). The parties do not dispute that the seal order deprives Plaintiff of a property interest, (R. 72, Resp. at 5; R. 75, Reply at 1-9), so the Court focuses on what process was due to Plaintiff.

In evaluating what satisfies due process under the Constitution, "the Supreme Court has distinguished between (a) claims based on established state procedures and (b) claims based on random, unauthorized acts by state employees." *Leavell v. Ill. Dep't of Nat. Res.*, 600 F.3d 798, 804 (7th Cir. 2010). "A claim based on a deprivation from established state procedures requires more than simply the availability of post-deprivation procedures." *Cannici*, 885 F.3d at 479. "The state's ability to predict when a deprivation will occur provides the state the ability to provide a pre-deprivation hearing." *Id.* "By contrast, when the state conduct in question is random and unauthorized, the state satisfies procedural due process requirements so long as it

14

provides a meaningful post-deprivation remedy." *Leavell*, 600 F.3d at 805 (quotation omitted). Thus, "for a plaintiff alleging a procedural due process claim based on 'random and unauthorized' conduct of a state actor, the plaintiff must either avail herself of state post-deprivation remedies or demonstrate that the available remedies are inadequate." *Id.* (quotation omitted).

Plaintiff alleges that the seal order seeks "to circumvent both regulatory and judicial processes," and that it is an "extra-legal attempt to accomplish instantaneously what it cannot lawfully do without proper notice and process." (R. 54, Am. Compl. ¶ 3.) Plaintiff alleges further that, with the seal order, "Defendants decided to bypass the court system" and pending court action in which Defendants allegedly sought the same relief they achieved through the seal order. (*Id.* ¶ 22.) Plaintiff claims that the seal order was justified by an August 2018 report issued by the "Agency for Toxic Substances and Disease Registry," who "is not a regulator" issuing reports that have "the force of law." (*Id.* ¶ 24.) According to Plaintiff, Defendants' justification for the seal order is contrary to the EPA's conclusions regarding the health risks posed by Plaintiff's Willowbrook facility, and that Plaintiff has operated the Willowbrook facility with IEPA's authorization and in compliance with all applicable regulations. (*Id.* ¶¶ 23, 25-26, 31, 41, 47.) These allegations essentially allege that Defendants violated Section 34(b) of the Act by issuing a seal order in the absence of an emergency. Plaintiff's due process claims fail at the outset because a state government does not violate the federal constitution just because it violates a state law. *Daw v. Consol. City of Indianapolis & Marion Cty.*, 734 F. App'x 357, 358-59 (7th Cir. 2018); *Bradley v. Sabree*, 594 F. App'x 881, 883 (7th Cir. 2015).

Additionally, Plaintiff's allegations detail "random and unauthorized" misconduct by IEPA officials in which they issued a seal order outside of established administrative and court

procedures in an effort to bypass those procedures. *See Cannici*, 885 F.3d at 480 (noting that

"unpredictable misconduct" based on a failure to follow requirements of existing law is a

"random and unauthorized" act); *Dufour v. Matrisch*, No. 18 CV 1269, 2018 WL 4073337, at *4

n.4 (N.D. Ill. Aug. 27, 2018) (finding that the plaintiff alleged a "random and unauthorized act"

because he alleged that an Illinois regulatory commission overrode another official's "issuance

of [the plaintiff's] permit by revoking it, suggesting that the [regulatory commission's]

employees were not following established procedures but rather acting in a 'random and

unauthorized' way"); *cf. Bolton v. Bryant*, 71 F. Supp. 3d 802, 810 (N.D. Ill. 2014) ("When a

state official acts within the bounds of discretion given to him by law, his acts are not random

and unauthorized."). In such circumstances involving alleged random and unauthorized

misconduct, no pre-deprivation process is required. *See Armstrong v. Daily*, 786 F.3d 529, 545

(7th Cir. 2015) (observing that, in the case of "random and unauthorized" state actions, "no

pre-deprivation hearing is required because it would be utterly impractical"); *Freelain v. Vill. of

Oak Park*, No. 17 C 6592, 2018 WL 1635853, at *6 (N.D. Ill. Apr. 5, 2018) (dismissing

pre-deprivation procedural due process claim based on allegedly "random and unauthorized"

acts). Accordingly, Plaintiff fails to allege any plausible grounds to support its pre-deprivation

due process claim.

      Plaintiff relies heavily on *Simpson v. Brown County*, 860 F.3d 1001 (7th Cir. 2017), but

that case is distinguishable. *Simpson* involved allegations that a county board revoked the

plaintiff's license to install and repair septic systems without prior notice or an opportunity to be

heard. *Simpson*, 860 F.3d at 1003. The court in *Simpson* concluded that the plaintiff had alleged a

"septic ordinance that plainly described the process for the placement of septic installers on a

register and . . . described the process for their removal[;]" therefore, the plaintiff had sufficiently

alleged that when the county officer revoked the plaintiff's license, the officer "acted pursuant to his broadly delegated powers derived from the ordinance." *Id.* at 1008. The court reasoned that "any license revocation that is 'random and authorized' will be an aberration" because the "existence of a license or permit implies the existence of a legal framework with revocation guidelines." *Id.* at 1007.

This case, on the other hand, does not involve Plaintiff's license to operate but a seal order that Plaintiff alleges is a circumvention of "regulatory and judicial processes" and an "extra-legal attempt to accomplish instantaneously what [Defendants] cannot lawfully do without proper notice and process." (R. 54, Am. Compl. ¶ 3.) *Simpson*, therefore, is not analogous because the plaintiff there alleged an established state procedure and broad delegation of power that led to the plaintiff's loss of a property interest. *Simpson*, 860 F.3d at 1007-10. There are no such allegations here and instead only allegations of state officials acting outside of their authority and in violation of state law. (R. 54, Am. Compl. ¶¶ 3, 22-47.)

Plaintiff's cited authorities outside of the Seventh Circuit are not binding on this Court and are nonetheless unpersuasive. They are either inapposite cases weighing evidence instead of allegations or involve situations where the state's actions depriving a person of due process was predictable and alleged to be part of an established state procedure, unlike the allegations in this case. (*See* R. 72, Resp. at 6-7 (citing *RBIII, L.P. v. City of San Antonio*, 713 F.3d 840, 847 (5th Cir. 2013); *Elsmere Park Club, L.P. v. Town of Elsmere*, 542 F.3d 412, 418 (3d Cir. 2008); *Catanzaro v. Weiden*, 188 F.3d 56, 62 (2d Cir. 1999); *Armendariz v. Penman*, 31 F.3d 860, 866 (9th Cir. 1994), *vacated in part on reh'g en banc*, 75 F.3d 1311 (9th Cir. 1996).) As a result, the Court concludes that Plaintiff fails to allege a pre-deprivation procedural due process claim because Plaintiff only alleges "random and unauthorized" acts by state officials for which no

pre-deprivation process is required. *See Armstrong*, 786 F.3d at 545; *Freelain*, 2018 WL 1635853, at *6.

Plaintiff then contends that the fair notice principles of due process prohibit Defendants from issuing a seal order because IEPA has approved of the Willowbrook facility's operation through the state's permitting process. (R. 72, Resp. at 8-11.) Plaintiff relies on *Wisconsin Resources Protection Council v. Flambeau Mining Co.*, 727 F.3d 700 (7th Cir. 2013), a case in which private citizens sued a mining company pursuant to the citizen-suit provisions of the Clean Water Act, 33 U.S.C. §§ 1251 *et seq.* (R. 72, Resp. at 8-9.) *Flambeau*, however, is not analogous. It addressed a due process claim that the defendant did not have fair notice of the type of permit it needed under the Clean Water Act to discharge storm water into a Wisconsin river. *Flambeau Mining Co.*, 727 F.3d at 708-09. The court reasoned that a "private party is entitled to rely on published regulations," and that "a defendant could not be charged," for example, "with violating the Clean Air Act when it complied with the published version of a regulation that was part of [a state's] administration of the Clean Air Act." *Id.* at 709. Thus, the court ruled that the plaintiffs could not hold the defendant liable for lacking a particular permit because it had the permit that state regulators told defendant was adequate, and the Clean Water Act shields a party from liability if it operates pursuant to a facially valid permit so long as the party was not on notice that its permit was invalid. *Id.* at 710-11.

*Flambeau* thus addressed an established state procedure, unlike the random and unauthorized conduct Plaintiff alleges in this case that was an attempt "to circumvent . . . regulatory and judicial processes." (R. 54, Am. Compl. ¶ 3.) Accordingly, *Flambeau* does not alter the Court's conclusion.

Additionally, *Flambeau* is a fair notice case that has no application here because

Plaintiff's pre-deprivation due process claims are based on a deprivation of its property rights

"without conducting any pre-deprivation hearing" or providing Plaintiff with "the opportunity to

be heard at a meaningful time in a meaningful manner." (R. 54, Am. Compl. ¶¶ 38-49.)

Plaintiff's due process claims are not—and could not be—based on allegations of a lack of fair

notice of Section 34(b) under the Act or Defendants' authority under Section 34(b), a statutory

provision that has been codified for years. *See United States v. Navistar Int'l Corp.*, 240 F. Supp.

3d 789, 799 (N.D. Ill. 2017) (distinguishing *Flambeau* and noting that the fair notice concerns in

that case do not apply where the statute or regulation at issue "could be ascertained from the

text" of the statute or regulation).

In other words, Plaintiff does not challenge the lack of clarity or notice provided by the

applicable statute and regulations as is required for a fair notice claim. *See id.*; *see also*

*Flambeau Min. Co.*, 727 F.3d at 708 ("In determining whether a party received fair notice, courts

frequently look to the regulations and other agency guidance. If, by reviewing the regulations

and other public statements issued by the agency, a regulated party acting in good faith would be

able to identify, with ascertainable certainty, the standards with which the agency expects parties

to conform, then the agency has fairly notified a petitioner[.]" (quotation omitted)). Instead,

Plaintiff alleges and argues that Defendants are not acting pursuant to an emergency and

therefore it lacks notice of Defendants' justification of the seal order. (R 54, Am. Compl.

¶¶ 38-57; R. 72, Resp. at 8-11.) This goes to the merits of Plaintiff's claim that Defendants

violated state law and is not enough to allege a deprivation of due process. *See Tenny*, 659 F.3d

at 583 (concluding that a procedural due process claim was not sufficiently alleged and

observing that "this case is really about a substantive violation of Illinois law, not about the procedures required before the plaintiffs can be deprived of a property interest").

Plaintiff also cites to *Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 155-56 (2012), but, like *Flambeau*, that case dealt with regulations that were unclear and did not give fair warning of the conduct that the regulations prohibited or required. So too did the other cases that Plaintiff cites. (R. 72, Resp. at 9[2] (citing *Gen. Elec. Co. v. U.S. Envtl. Prot. Agency*, 53 F.3d 1324, 1329-31 (D.C. Cir. 1995), *as corrected* (June 19, 1995); *United States v. Am. Nat. Can Co.*, 126 F. Supp. 2d 521, 530 (N.D. Ill. 2000)).) The Court, therefore, is unpersuaded by Plaintiff's argument that this is a case of "regulation by ambush." (R. 72, Resp. at 9.) Unlike *Flambeau* and the other cases Plaintiff relies on, Plaintiff does not allege that the language of Section 34(b) or any other statute or regulation affecting the Willowbrook facility fails to clearly convey what is required. (*See id.*) Instead, Plaintiff alleges that it lacked fair notice of Plaintiff's *justification* for invoking a statutory provision and that Defendant improperly invoked that provision, which are not the relevant considerations in *Flambeau* and the other fair notice cases that Plaintiff cites. *See, e.g., Flambeau Min. Co.*, 727 F.3d at 708. Accordingly, Plaintiff fails to state a pre-deprivation procedural due process claim.

Turning to Plaintiff's post-deprivation procedural due process claim, to survive a motion to dismiss, Plaintiff must allege that there are inadequate procedures to challenge the seal order after it was issued. *Leavell*, 600 F.3d at 805-06; *see also Waldon v. Wilkins*, 400 F. App'x 75, 79-80 (7th Cir. 2010) ("For a party alleging such a procedural due process claim based on

---

[2] Plaintiff also relies on *United States v. Cinergy Corp.*, 623 F.3d 455, 458 (7th Cir. 2010), which stands for the proposition that the federal Clean Air Act does not authorize the imposition of sanctions for conduct that complies with a state's regulations promulgated under the Clean Air Act. That case, however, was brought by the federal government and concerned whether there had been a violation of the Clean Air Act, *Cinergy Corp.*, 623 F.3d at 456, not whether there had been a violation of due process, which is the precise question before the Court.

'random and unauthorized' conduct, the plaintiff must either avail himself of state post-deprivation remedies or demonstrate that the available remedies are inadequate." (quotations omitted)). Section 34(d) of the Act provides that the seal order can be challenged by an administrative hearing or by way of a lawsuit seeking "immediate injunctive relief." 415 ILL. COMP. STAT. 5/34(d); *see also, e.g., Landfill, Inc. v. Pollution Control Bd.*, 387 N.E.2d 258, 260 (Ill. 1978) (ruling that a party may challenge an Illinois agency's action in state court if the action "is challenged as unauthorized"); *Tarkowski v. Ill. Envtl. Prot. Agency*, PCB 09-62, 2009 WL 1511352, at *2 (Ill. Pollution Control Bd. May 21, 2009) (hearing a request to lift a seal order issued pursuant to Section 34 of the Act). State courts supply the process due for random and unauthorized misconduct by state employees. *James v. Madigan*, 373 F. App'x 619, 621 (7th Cir. 2010). The ability to challenge the seal order in state court alone is enough to satisfy due process, and therefore Plaintiff fails to plausibly allege that it was deprived of an adequate post-deprivation hearing or process to challenge the seal order. *See Tucker v. Williams*, 682 F.3d 654, 661 (7th Cir. 2012) (concluding that there were adequate post-deprivation procedures available to the plaintiff where he could have brought a claim in state court); *Tenny*, 659 F.3d at 583 (noting that there was a viable post-deprivation remedy where "Illinois courts can and will entertain [the plaintiff's] claims and may grant injunctive and declaratory relief"); *see also Johnson v. Wallich*, 578 F. App'x 601, 602 (7th Cir. 2014) (affirming dismissal of due process claim because the plaintiff was afforded, by way of state statutes, procedures that could "address random, unauthorized deprivations of property by state officers and officials").

Plaintiff alleges that its options in state court are not ideal, but to allege an inadequate post-deprivation remedy, Plaintiff must plausibly allege that the post-deprivation remedies available in state court are "meaningless" or "nonexistent." *Easter House v. Felder*, 910 F.2d

1387, 1406 (7th Cir. 1990); *see also Simpson*, 860 F.3d at 1010 ("Though a state remedy need not match in every respect the relief otherwise available under § 1983, such a remedy must still offer meaningful redress for the particular injury suffered by the plaintiff."). Plaintiff does not plausibly allege that the procedures to challenge a seal order under Section 34(d) are meaningless or nonexistent; rather, Plaintiff alleges that the procedures are not as prompt and effective as those afforded under the federal Clean Air Act. (R. 54, Am. Compl. ¶¶ 54-57.) Though Plaintiff would prefer the procedures promulgated under federal law, due process does not require a process that is "afforded at the time and in the manner of one's own choosing." *Krison v. Nehls*, 767 F.2d 344, 349 (7th Cir. 1985). Nor is state law process inadequate simply because, as Plaintiff alleges, it fails to provide relief that is as "prompt" or "certain" as relief provided under federal law. *See Brunswick Corp. v. McNabola*, No. 16 CV 11414, 2017 WL 3008279, at *5 (N.D. Ill. July 14, 2017) (observing that "state-law relief is not deemed inadequate because it is far from certain and complete" and "litigants may lament that a particular forum may yield a more favorable result depending upon the nature of the claim and the particular position they support"(quotations omitted)). Accordingly, Plaintiff fails to state any claim for deprivation of its post-deprivation due process rights.

Given that Plaintiff fails to sufficiently allege a claim under Section 1983 or any other federal law, there are no pending federal claims that could provide grounds for subject-matter jurisdiction. *See* 28 U.S.C. § 1331. The Court also finds that supplemental jurisdiction would not

be appropriate over Plaintiff's Section 34(b) state-law claim.[3] *See* 28 U.S.C. § 1367; *Mains v. Citibank, N.A.*, 852 F.3d 669, 679 (7th Cir. 2017) ("[T]he federal claims were properly dismissed on the merits at a very early stage, and so the district court properly could relinquish its jurisdiction over the state claims."); *Miller v. Herman*, 600 F.3d 726, 738 (7th Cir. 2010) ("Normally, when all federal claims are dismissed before trial, the district court should relinquish jurisdiction over pendent state-law claims rather than resolving them on the merits." (quotation omitted)). Accordingly, both sovereign immunity and the lack of any federal question mandate dismissal of this action. Because the Court lacks jurisdiction, the Court need not reach Defendants' alternative argument that the Court should abstain from exercising jurisdiction pursuant to the principles in *Younger v. Harris*, 401 U.S. 37 (1971). The Court, therefore, dismisses the amended complaint without prejudice to Plaintiff seeking relief in state court.

---

[3] To the extent that Plaintiff asserts its Section 34(b) is a federal claim that provides a basis for federal question jurisdiction, the Court disagrees. Such jurisdiction cannot be premised on a Section 34(b) claim because, as addressed above and touched upon in Judge Lee's order, that claim arises out of state law. *See Int'l Union of Operating Eng'rs, Local 150, AFL-CIO v. Ward*, 563 F.3d 276, 281 (7th Cir. 2009) ("[W]hen the basis of the action is a federal statute, a federal cause of action must exist as well for a federal court to hear a given claim; the general grant of federal question jurisdiction contained in § 1331, without a federal cause of action, is not enough.").

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss (R. 63) is GRANTED as set forth herein. This case is DISMISSED without prejudice to Plaintiff litigating this dispute in state court.

ENTERED:      

**Chief Judge Rubén Castillo**
**United States District Court**

**Dated: May 3, 2019**